## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

KRISTY D. MILLS,                    )
           )
     Plaintiff,     )
           )
v.                                 )  Case No. CIV-06-126-KEW
           )
JO ANNE B. BARNHART,               )
Commissioner of Social             )
Security Administration,           )
           )
     Defendant.     )

## OPINION AND ORDER

  Plaintiff Kristy D. Mills (the "Claimant") requests judicial
review of the decision of the Commissioner of the Social Security
Administration (the "Commissioner") denying Claimant's application
for disability benefits under the Social Security Act.  Claimant
appeals the decision of the Administrative Law Judge ("ALJ") and
asserts that the Commissioner erred because the ALJ incorrectly
determined that Claimant was not disabled.  For the reasons
discussed below, it is the finding of this Court that the
Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

  Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."
42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social
Security Act "only if his physical or mental impairment or
impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 25, 1972 and was 33 years old at the time of the ALJ's decision. She completed her high school education, which included special education classes. Claimant has worked in the past as a housekeeper, kitchen helper, stacker or carry out worker and a dishwasher. Claimant alleges an inability to work beginning March 7, 2003, due to low back problems and pain, knee problems, depression with psychotic features, a learning disability resulting in reading problems, concentration difficulties, short term memory problems, and excessive sleeping.

### Procedural History

On January 28, 2004, Claimant protectively filed for

3

Supplemental Security Income under Title XVI of the Social Security Act (42 U.S.C. § 1381 *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. A hearing before ALJ Larry Weber was held on June 15, 2005 in McAlester, Oklahoma. By decision dated August 9, 2005, the ALJ found that Claimant was not disabled at any time through the date of the decision. On March 2, 2006, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow her to perform sedentary work.

### Review

Claimant asserts the ALJ committed error requiring reversal in (1) ignoring probative evidence which contradicted the ALJ's conclusions; and (2) failing to properly develop the record related to Claimant's back impairments.

### Evaluation of Probative Evidence

Claimant asserts the ALJ failed to properly consider evidence which allegedly would have contradicted his ultimate findings.

4

Claimant first contends the ALJ discussed only those portions of the mental status examination performed by Patricia Durant and signed by Patti Cannon as reflected in the report dated January 5, 2004 which supported his eventual findings and ignored others, less supportive of his position. Ms. Cannon's report reflects Claimant's past psychiatric diagnoses of major depression with psychotic features and personality disorder. (Tr. 225). At her examination, Claimant was observed to be alert, friendly with good eye contact and clear speech. However, Claimant's psychomotor activity was elevated, her self-described mood of frustrated and confused was found to be congruent with her description, she exhibited tangentiality and indecisiveness, with paranoia and phobias. (Tr. 226). The report's final observations include

> Ct presents depression & inability to cope with daily life situations. Ct also exhibits co-dependency & paranoid features. Ct has been physically /mentally abused by ex-husband as a result of allowing children to live in unsafe environment, client's 2 daughters are in DHS custody. Ct grieves over the loss of her children to DHS & is attempting to follow all goals set in order to have her children returned to her custody.

The final diagnosis includes depressive disorder with psychotic features with a current Global Assessment Function ("GAF") of 40 with the highest GAF over the past year of 45. (Tr. 228).

The ALJ's statements with regard to this report are reflected in his decision as follows

Claimant was apparently seen at Rustling Winds Mental

Health Center on two occasions, January 5 and 26, 2004 for counseling (Exhibit 13F). Claimant's presentation appears to have been precipitated in part by the loss of custody of her children to DHS due to unsafe environment (apparently due to spousal abuse). Claimant, upon intake mental status examination, was alert, friendly, and exhibited normal posture. Thought processes were logical and goal directed. Memory function was intact, claimant able (sic) to repeat three items immediately and two after 5 minutes. Claimant was able to concentrate during the interview, and able to perform math problems, but had difficulty preforming serial seven subtractions. Intellectual functioning was intact. Social judgment was intact; claimant was thought to lack insight with respect to her illness. Diagnosis was depressive disorder.

(Tr. 18-19).

The ALJ further adopted the findings of the non-examining DDS consultants as reflected in the Psychiatric Review Technique ("PRT") form contained in the record. The DDS consultants recognized Claimant's affective disorders and anxiety related disorders which included decreased energy, feelings of guilt or worthlessness and hallucinations or paranoid thinking. (Tr. 230; 233). The PRT reflects moderate limitations on Claimant's restrictions of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence or pace, and one or two episodes of decompensation of extended duration. (Tr. 240).

The Functional Capacity Assessment form includes marked limitations in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. (Tr. 244). The final assessment states

Claimant can perform simple tasks on a routine basis. She can interact with others for work purposes. She can adapt to simple work situations.

(Tr. 246).

Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is "significantly probative." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Without a doubt, the ALJ noted all positive references to Claimant's mental status in Ms. Cannon's report, who actually examined Claimant, and made no comment concerning the negative aspects of the report which would bear directly on her ability to function in the workplace. Instead, the ALJ relied heavily upon and expressly sided with the non-examining DDS consultant, who also found marked limitations on Claimant's ability to function. Beyond tailoring the opinion in this regard, the ALJ failed to discuss the basis for adopting the opinions of a non-examining consultant over an examining professional, which he is required to do. Hamlin v. Barnhart, 365 F.3d 1208, 1223 (10th Cir. 2004)("If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.") Defendant argues Ms. Cannon is a counselor rather than a psychiatrist or psychologist and, therefore, she does not qualify as an acceptable medical source. However, the ALJ did not state this as the basis for rejecting the opinion in his decision. Rather, Defendant now makes

the argument for the ALJ in an attempt to bolster his deficient opinion. On remand, the ALJ shall specifically address this issue.

Moreover, the ALJ did not reference GAF of 40, with a high of 45. Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical

Manual of Mental Disorders 34 (4th ed. 2000). A GAF of between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed person avoids friends, neglects family, and is unable to work . . . ." while a GAF between 41 and 50 encompasses a person who shows "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." <u>Id</u>. Given the fact Claimant's GAF has fallen within these categories which directly conflict with the ALJ's finding Claimant can work with supervisors and coworkers, the ALJ will be required to explain his apparent but unexplained rejection of these assessments.

## Duty to Develop the Record

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. <u>Branam v. Barnhart</u>, 385 F.3d 1268, 1271 (10th Cir. 2004) citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues

raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996).

Claimant suggests the ALJ should have ordered further consultative physical testing of her due to a comment made by Dr. Richard Hastings in a report issued April 30, 2003 in relation to Claimant's back problems and pain. In that report, Dr. Hastings states "[t]he patient will require additional diagnostic testing to include CT myleogram or an awake lumbar discogram as diagnostic testing, which has been performed has been inadequate, and the ability to present the extent of injury sustained to the lobosacral back based upon the failing of MRI testing for that purpose." (Tr. 209). Later, in a report on October 28, 2003, Dr. Hastings states the testing was ordered "to confirm the extent of injury to determine whether or not [Claimant] was a surgical candidate . . . ." (Tr. 202). Because Dr. Hastings' report appears to find the prior testing to be wanting in order to evaluate the extent of injury suffered by Claimant, it is reasonable, indeed necessary, to require such additional testing in order to the bearing of the injury upon Claimant's ability to work. As a result, on remand, the ALJ shall order appropriate consultative testing on Claimant's

back condition.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 21st day of December, 2006.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE